**Not for Publication**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

**ZHICHENG CHEN,**

**Petitioner,**

**v.**

**LUIS SOTO,** *Director of Delaney Hall*, *et al.*,

**Respondents.**

**Civil Action No.: 25-18559 (ES)**

**OPINION**

**SALAS, DISTRICT JUDGE**

Before the Court is the counseled motion to enforce judgment filed by petitioner Zhicheng Chen ("Petitioner"). (D.E. No. 8 ("Motion to Enforce Judgment")). Respondents filed a letter response to the Motion to Enforce Judgment (D.E. No. 9 ("Response")), and Petitioner filed a letter replying to the Response (D.E. No. 12 ("Reply")). Having considered the parties' submissions, the Court decides this matter without oral argument. *See* Fed. R. Civ. P. 78(b); L. Civ. R. 78.1(b). For the reasons set forth below, the Motion to Enforce Judgment is **DENIED**.

**I.    BACKGROUND**

On December 12, 2025, Petitioner filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 (D.E. No. 1 ("Petition" or "Pet.")), and a motion for temporary restraining order ("TRO") (D.E. No. 2 ("TRO Motion" or "TRO Mot.")). Petitioner is an immigration detainee confined at Delaney Hall Detention Facility ("Delaney Hall") in Newark, New Jersey. (Pet. ¶ 12). Petitioner names as respondents (in their official capacities): Luis Soto, the Director of Delaney Hall; Todd Lyons, Acting Director of U.S. Immigration and Customs Enforcement ("ICE"); Kristi

Noem, the then-Secretary of the U.S. Department of Homeland Security ("DHS"); and Pamela

Bondi, the then-Attorney General of the United States. (Pet. ¶¶ 13–16).

On December 12, 2025, the Court entered the following Text Order:

> This matter is before the Court on Petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 (D.E. No. 1 ("Petition" or "Pet")) and his motion for a temporary restraining order ("TRO") (D.E. No. 2 ("TRO Motion" or "TRO Mot.")). Pursuant to the All Writs Act, see 28 U.S.C. § 1651(a), Respondents SHALL NOT TRANSFER Petitioner from the District of New Jersey, and SHALL NOT REMOVE Petitioner from the United States, pending further order of this Court. Accordingly, to the extent Petitioner moves for a TRO temporarily enjoining his removal from the District of New Jersey, the TRO Motion is DENIED as moot. To the extent that Petitioner seeks a TRO ordering his immediate release from immigration detention, the TRO Motion is DENIED without prejudice because such release is greater than the relief Petitioner could obtain in his underlying Petition. As Petitioner indicates, even under his reading of the relevant immigration statutes, he is still subject to detention under 8 U.S.C. § 1226(a), albeit with an entitlement to seek bond from an immigration judge. (See Pet. 5). The Clerk of Court shall terminate the Motion pending at D.E. No. 2. According to Petitioner, Respondents are presently detaining Petitioner under the mandatory detention provisions of 8 U.S.C. § 1225(b), pursuant to a July 8, 2025 Department of Homeland Security memorandum and the decision of the Board of Immigration Appeals in In Matter of Yajure Hurtado, 29 I. & N. Dec. 216 (BIA 2025). (Pet. 26-28). Under this Court's recent decision in Diaz Rudecindo v. Florentino, No. 25-16942, 2025 WL 3470299 (D.N.J. Dec. 3, 2025), the Court holds that Petitioner is subject to detention under § 1226(a), which requires an opportunity to seek bond, id. at *2-4. Specifically, it appears that: (i) Petitioner entered the country without being paroled or admitted, on or about November 30, 2023; (ii) two days after he was initially detained, Petitioner was subsequently released on his own recognizance; (iii) the Notice to Appear charged Petitioner with being an alien present in the United States without being admitted or paroled; (iv) Petitioner obtained employment authorization and has been working two jobs to support himself; and (v) on December 4, 2025, in the interior of the United States, Petitioner was detained at a routine U.S. Immigration and Customs Enforcement check-in. (Pet. 17-18, 19). Based on these alleged facts, Diaz Rudecindo controls this present matter. Diaz Rudecindo, 2025 WL 3470299, at *4. In accordance with 8 U.S.C. § 1226(a), within seven (7) days of the date of entry of this Text

2

Order, Respondents shall provide Petitioner with an individualized bond hearing before an immigration judge who shall assess whether he presents a flight risk or a danger to the community. Within three (3) days of that bond hearing, Respondents shall file a written notice of the outcome of that hearing with this Court. If Respondents contend that Diaz Rudecindo does not control, they shall file an expedited answer within five (5) days of the date of entry of this Text Order, and Petitioner may file a reply within three (3) days of the date of filing of Respondents' expedited answer. Finally, the Clerk of Court shall forward a copy of the Petition (D.E. No. 1), the attached documents (D.E. Nos 1-1 through 1-4), the TRO Motion and supporting documents (D.E. Nos. 2, 2-1 & 2-2), and this Text Order to the Chief, Civil Division, United States Attorney's Office, at the following email address: USANJ-HabeasCases@usdoj.gov.. So Ordered by Judge Esther Salas on 12/12/2025. (ek) (Entered: 12/12/2025)

(D.E. No. 3 ("December 12, 2025 Text Order")).

On December 22, 2025, the Court entered a second Text Order granting the parties' request for an extension of time to provide Petitioner with a bond hearing through December 30, 2025. (D.E. No. 6).

On December 29, 2025, Immigration Judge ("IJ") Nicole Lane conducted a bond hearing and denied Petitioner release on the grounds that he poses a flight risk. (*See* D.E. No. 7 at 1).

Petitioner filed his Motion to Enforce Judgment on January 8, 2026. (D.E. No. 8). On January 20, 2026, Respondents filed their Response (D.E. No. 9), and Petitioner filed his Reply on January 29, 2026 (D.E. No. 12).

## II.    LEGAL STANDARD

Under 28 U.S.C. § 2241, habeas relief may be granted if an individual "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3); *Maleng v. Cook*, 490 U.S. 488, 490 (1989) (per curiam). "[A]bsent suspension, the writ of habeas corpus remains available to every individual detained within the United States. U.S. Const., Art. I, § 9, cl. 2." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004). A habeas petitioner has "the burden

3

of sustaining his allegations by a preponderance of evidence." *Walker v. Johnston*, 312 U.S. 275, 286 (1941).

This Court does not have jurisdiction to review the IJ's discretionary decision to grant or deny bond; however, it may review whether a bond hearing was fundamentally unfair and thus violated the Due Process Clause of the Fifth Amendment. *See, e.g.*, *Ghanem v. Warden Essex Cnty. Corr. Facility*, No. 21-1908, 2022 WL 574624, at *2 (3d Cir. Feb. 25, 2022) (not precedential).

## III.   DISCUSSION

"In a fundamentally fair bond hearing, due process has three essential elements. 'An alien: (1) is entitled to factfinding based on a record produced before the decisionmaker and disclosed to him or her; (2) must be allowed to make arguments on his or her own behalf; and (3) has the right to an individualized determination of his [or her] interests.'" *Ghanem*, 2022 WL 5474624, at *2 (alteration in original) (quoting *Kamara v. Att'y Gen. of U.S.*, 420 F.3d 202, 211 (3d Cir. 2005)).

Petitioner does not dispute that IJ Lane's factfinding was based on a record produced before the IJ and disclosed to Petitioner.  Furthermore, it is undisputed that Petitioner, who was represented by counsel at the bond hearing, had an opportunity to present arguments on his behalf. Petitioner instead argues that "the IJ failed to provide an individualized determination, ignored relevant evidence, and made a finding of flight of risk that was conclusory and devoid of reasoned consideration." (D.E. No. 8-1 ("Pet'r's Mem. of Law") at 1).  According to him, the decision in this matter was clearly not individualized because IJ Lane expressed concern about flight risk, made passing references to the evidence, and dismissed some of the evidence as failing to ameliorate the risk of flight while ignoring "the 129-page evidence packet" regarding the issue of flight risk (including witness letters, a letter from a sponsor, verification of Petitioner's current

4

housing assignment, his driver's learner's permit and proof of bank account, his wife's employment authorization and letter of support, his child's employment authorization and letter of support, letters of support from his lawful permanent resident sister and brother-in-law, letters of support from his church, and a filed and prima facie eligible asylum application). (*Id.* at 1, 7; *see also* Reply at 2 ("The IJ made passing references to the evidence but failed to actually evaluate the evidence as a whole and ignored large portions of Petitioner's submissions that go to the heart of the flight risk determination . . . .")). Specifically, IJ Lane purportedly relied solely on Petitioner's length of residence in the United States, without considering the other relevant factors or whether an appropriate bond amount could ameliorate the risk of flight, and her decision "makes even less sense" because Petitioner was previously released on his own recognizance after entering the United States.[1] (Pet'r's Mem. of Law at 7–8; *see also* Reply at 3 (arguing that the IJ appears to have only considered the length of residence factor)). In addition, Petitioner indicates that "mechanistic" reliance on factors that are common to all (or most) detainees is insufficient to satisfy the "individualized determination" prong. (Pet'r's Mem. of Law at 9).

"A bond hearing is individualized 'if it is not so arbitrary that it would offend fundamental tenets of due process' and 'if there is a discernible rational basis for the underlying administrative

---

[1]    In *Matter of Guerra*, 24 I. & N. Dec. 37 (BIA 2006), the BIA enumerated nine factors that IJs may consider in determining whether an alien or non-citizen merits release from bond (and the amount of bond that is appropriate):

> (1) whether the alien has a fixed address in the United States; (2) the alien's length of residence in the United States; (3) the alien's family ties in the United States, and whether they may entitle the alien to reside permanently in the United States in the future; (4) the alien's employment history; (5) the alien's record of appearance in court; (6) the alien's criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses; (7) the alien's history of immigration violations; (8) any attempts by the alien to flee prosecution or otherwise escape from authorities; and (9) the alien's manner of entry to the United States. *Matter of Saelee*, 22 I&N Dec. 1258 (BIA 2000); *Matter of Drysdale*, [20 I.& N. Dec. 815, 817 (BIA 1994)]; *Matter of Andrade*, 19 I&N Dec. 488 (BIA 1987).

*Id.* at 40.

decision, and the immigration judge applies the correct legal standards, that suffices.'" *Haiguang Zheng v. Rokosky*, No. 26-1689, 2026 WL 800203, at *4 (D.N.J. Mar. 23, 2026) (quoting *Vasquez-Rosario v. Noem*, No. 25-7427, 2026 WL 395711, at *2 (E.D. Pa. Feb. 12, 2026)); *see also Chen v. Rose*, No. 26-0501, 2026 WL 473347, at *1 (E.D. Pa. Feb. 19, 2026) ("A bond hearing is individualized if it is not 'so arbitrary that it would offend fundamental tenets of due process.' And if 'there is a discernible rational basis for the underlying administrative decision, and the immigration judge applies the correct legal standards, that suffices.'" (quoting *Romero v. Ogle*, No. 21-1192, 2021 WL 836027, at *3 (M.D. Pa. Nov. 12, 2021))).  The Court concludes that the bond hearing in this case satisfies these requirements for an individualized administrative determination.

Petitioner submitted extensive evidence in support of his bond request and the IJ permitted both DHS counsel and Petitioner's attorney to state their positions regarding the request.  In fact, Petitioner's counsel argued at some length in support of granting release on bond.  (D.E. No. 12-2 ("Tr.") at 4:19–7:14).  After hearing the parties' arguments, IJ Lane rendered the following reasoned decision on the record:

> THE COURT: All right. As for the Court's decision regarding the request for bond, it's noted there are no jurisdictional issues mentioned. As for dangers to community, there's been no information provided by either side that the Respondent has committed any crimes or -- and nothing showing danger to the community. However, the court is concerned about flight risk, specifically given the short period of time that the Respondent has been here. Although it's noted that he's with his wife and child, it's noted he came in with his wife and child, and everybody's in removal proceedings, so it doesn't really add to a level of him having some type of a lesser risk of flight, given those concerns.
>
> It's also noted -- and I do understand what Respondent's counsel is saying that he didn't file taxes given the short period of time for which he's been here and by next year he would, and it is noted he has employment, but it doesn't show overall any meaningful or

> verifiable ties to community. It's noted that he lives with his nephew, but again, it's not that he owns the property or there's any tie to the property whatsoever.
>
> So given the concerns of flight risk, the Court at this time would deny bond.

(*Id.* at 7:17–8:9).

Although IJ Lane could have provided a more thorough discussion of the parties' contentions and the circumstances weighing for (and against) release on bond, she still provided "a discernible rational basis" for her denial of release on bond, she applied the correct legal standards, and the decision was not "so arbitrary" as to violate fundamental due process principles. *Haiguang Zheng*, 2026 WL 800203, at *4 (citation omitted).  Petitioner acknowledges that "an administrative court 'is not required to write an exegesis on every contention'" but instead must provide "a meaningful bond hearing."  (Pet'r's Mem. of Law at 5 (quoting *Gallegos Trinidad v. Att'y Gen.*, No. 22-2687, 2023 WL 6121768, at *4 (3d Cir. Sept. 19, 2021) (not precedential)). Here, IJ Lane explained that one of the applicable factors—the noncitizen's length of residence in the United States—weighed in favor of finding that Petitioner is a flight risk.  (*See* Tr. at 7:17–8:9); *Guerra*, 24 I. & N. Dec. at 40.  However, the IJ did not merely (or "mechanistically") rely on Petitioner's relatively brief period of residence in the United States.  She also considered and weighed other *Guerra* factors and Petitioner's specific arguments, observing that his wife and child are also in removal proceedings, "so it doesn't really add to a level of him having some type of a lesser risk of flight, given those concerns;" he has not (yet) filed taxes; "he has employment, but it doesn't show overall any meaningful or verifiable ties to community;" and "[i]t's noted that he lives with his nephew, but again, [he does not] own[] the property."[2]  (*Id.*).

---

[2]  Petitioner argues that "[t]he IJ's mechanistic decision in this case is akin that found [sic] in other cases such as *Y.S.G. v. Andrews*, [No. 25-1884, 2025 WL 2979309] (E.D. Cal. Oct. 22, 2025) and *Wilkins v. Doll*, [No. 17-2354,

Accordingly, "Petitioner's challenge to [the IJ's] finding that Petitioner poses a flight risk is a challenge to the judge's credibility determination and weighing of the evidence, which are discretionary determinations beyond this Court's review." *Lema Leon v. Bondi*, No. 26-0193, 2026 WL 685688, at *2 (D.N.J. Mar. 11, 2026) (citing 8 U.S.C. § 1226(e); *Ghanem*, 2022 WL 574624, at *2) (rejecting the petitioner's arguments that the IJ's finding that he did not meet his burden of establishing he was not a flight risk because the IJ's finding lacked any reasoning or support given "the voluminous supporting documentation" filed with the bond request and that it was "evident that the [IJ] did not consider the Petitioner's facts and evidence" (citations omitted)); *see also Ibrahim v. Rokosky*, No. 25-17189, 2026 WL 948230, at *1–2 (D.N.J. Apr. 8, 2026) (indicating that the argument that the bond hearing was fundamentally unfair because the IJ relied on "mechanistic" factors challenged the weighing of the evidence falling within the IJ's discretion and was not subject to the court's review); *De Souza v. Soto*, No. 25-18734, 2026 WL 102946, at *3 (D.N.J. Jan. 14, 2026) ("Petitioner's arguments that the IJ 'summarily' deemed Petitioner a flight risk is a challenge to the judge's credibility determination and weighing of the evidence, which are discretionary determinations beyond this Court's review." (citations omitted)); *Cano v. Soto*, No. 25-18008, 2026 WL 63486, at *1 (D.N.J. Jan. 8, 2026) (concluding that the petitioner's arguments that the IJ failed to consider his history of appearing for ICE check-ins and focused on irrelevant details were challenges to the weight of the evidence). The Court does not express any

---

2018 WL 3388032] (D.N.J. July 12, 2018)." (Reply at 3). However, in the present matter, the IJ did "meaningfully discuss the probative evidence petitioner submitted demonstrating his significant ties to the community," and, in any event, Petitioner agrees that, unlike in *Y.S.G.*, the burden of proof in the current matter was on Petitioner. (Pet'r's Mem. of Law at 8 & n.2 (quoting *Y.S.G.*, 2025 WL 2979309, at *11)). Likewise, the *Wilkins* court concluded that "the IJ relied almost exclusively on a 'mechanistic factor' common to virtually all immigration detainees that are subject to prolonged detention, *i.e.*, the existence of a removal order entered by an IJ." *Wilkins*, 2018 WL 3388032, at *2 ("Under this reasoning, every detainee who has a pending appeal of a removal order would be ineligible for bond. Such a determination is not sufficiently individualized.") (citing *Singh v. Holder*, 638 F.3d 1196, 1205 (9th Cir. 2011); *Sanchez v. Sabol*, No. 15-2423, 2016 WL 742619, at *5 (M.D. Pa. Dec. 23, 2016)). The IJ in the present case did not "rely almost exclusively" on Petitioner's length of residence. In addition, there is no indication that "virtually all immigration detainees" entitled to a bond hearing under § 1226(a) have resided in this country for a relatively brief period of time.

opinion on whether the IJ reached the correct conclusion; however, the record compels a finding that Petitioner received the individualized bond hearing required under 8 U.S.C. § 1226(a) and *Ghanem*.  Any challenge to the IJ's denial of bond must be presented to the BIA.[3]

## IV.    CONCLUSION

For the reasons stated above, the Court **DENIES** the Motion to Enforce Judgment.  An appropriate order follows.

s/ *Esther Salas*
**Esther Salas, U.S.D.J.**

---

[3]    Petitioner also contends that Petitioner is "now detained and stuck in administrative limbo due to no fault of his own" because, following the bond hearing conducted by IJ Lane of the Elizabeth, New Jersey Immigration Court, an IJ with the Otero, New Mexico Immigration Court issued an order terminating the immigration proceeding without prejudice because DHS failed to produce Petitioner (who had been returned to Delaney Hall under this Court's December 12, 2025 Text Order) for a master calendar hearing.  (Pet'r's Mem. of Law at 9–10 (emphasis omitted)).  However, subsequently, on February 24, 2026, the Elizabeth Immigration Court held a removal proceeding, denied Petitioner's applications for asylum and withholding of removal, and ordered him removed to China.  (*See* D.E. No. 14 at 1).  Petitioner's administrative appeal from this removal order remains pending.  *See* EOIR Automated Case Information, https://acis.eoir.justice.gov/en/caseInformation (last visited May 26, 2026).